UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-cv-00031-KDB-DCK

| | |
|---|---|
| ANTHONY SCOTT GLENN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| VELOCITI, INC., and DERYK L. ) | |
| POWELL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendants' Motion for Reconsideration, (Doc. No. 40). The Court has carefully considered this motion, which, for the reasons discussed below, will be **DENIED**.

I. **LEGAL STANDARD**

While the Federal Rules of Civil Procedure do not specifically contain a "motion for reconsideration," such motions are allowed in certain, limited circumstances. Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citing *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)). The power to reconsider or modify

1

interlocutory rulings is committed to the discretion of the district court and is not subject to the strict standards applicable to motions for reconsideration of a final judgment. *See Fayetteville Invs.*, 936 F.2d at 1473; *Am. Canoe*, 326 F.3d at 514.

Grounds for Rule 54(b) reconsideration include: "(1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice." *Wootten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Such motions are "not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Id; DIRECTV, INC. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004). Thus, a motion for reconsideration is inappropriate to the extent it "merely reiterates previous arguments." *Univ. of Va. Patent Found. v. GE*, 755 F. Supp. 2d 738, 744 (W.D. Va. 2011).

## II. DISCUSSION

Defendants do not argue that there has been any change in the applicable law nor that any evidence exists that was unavailable during the Court's consideration of summary judgment. Rather, Defendants contend there are "several clear errors resulting in manifest injustice" in the Court's Order granting in part and denying in part the parties' cross-motions for summary judgment. (Doc. No. 41 at 4). Put somewhat differently, but accurately, Defendants simply disagree with the Court's decision, arguing that the Court erred in its analysis of both the claimed breach of

2

contract and violation of the North Carolina Wage and Hour Act ("NCWHA"). However, none of Defendants' asserted errors merit a change in the Court's ruling.

### A. Breach of Contract

Regarding the breach of contract claim, Defendants first argue the Court erred by not finding that Velociti had authority to reassign Mr. Glenn's accounts. (Doc. No. 41 at 4). In doing so, Defendants merely reiterate arguments already made to, and addressed by, this Court. (Doc. Nos. 24 at 7–8; 37 at 10–11). The Court will not rehash its explanation here nor does the Court find that it "clearly erred" in concluding that reassignment of Glenn's assigned accounts directly and fundamentally altered his compensation, which required Defendants to give proper statutory notice under the NCWHA. (*See* Doc. No. 37 at 11).

Second, Defendants argue the Court erred by importing the NCWHA notice requirement into Plaintiff's breach of contract claim. (Doc. No. 41 at 9). Specifically, Defendants contend the Court relied on an unpublished case over more "controlling" published cases. (Doc. No. 41 at 9–10). The Court disagrees.

A federal court sitting in diversity jurisdiction must apply the law of the state's highest court. *Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (citations omitted). "But in a situation where the [state] Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." *Id.* (citation omitted); 19 Fed. Prac. & Proc. Juris. § 4507 (3d ed.). Though Defendants are correct in that they cited published cases for this Court to consider, those cases

3

neither hail from the Fourth Circuit nor the North Carolina Supreme Court; so, while they may inform the Court's decision, they do not control it. Accordingly, this Court did not clearly err in applying the law as laid out in an unpublished opinion from the North Carolina Court of Appeals, which is much closer to the spirit of the principle of trying to predict North Carolina law.

Third, Defendants argue – incorrectly – that the Court erred by failing to address the issue of waiver. (Doc. No. 41 at 11). The Court did address waiver and concluded that the doctrine of waiver "fails for lack of written notice" under the NCWHA. (Doc. No. 37 at 15–16). Thus, the Court did not clearly err in this regard.

Fourth, Defendants argue the Court erred by not reserving the question of waiver for the jury. (Doc. No. 41 at 14). This argument fails for the same reason –the application of the waiver doctrine is inapplicable where Defendants failed to provide the written notice required under the NCWHA, and the Court did not clearly err by so concluding.

Fifth, Defendants argue the Court erred by finding liability for unpaid bonuses beyond 2017 because the 2017 Contract provides only for a bonus in the year 2017, and any additional bonuses were discretionary. (Doc. No. 41 at 14–16; *see* Doc. No. 24-3 at 8 ("If the Annual Total Revenue Goal from all (NEW and EXISTING) accounts assigned to employee is achieved in 2017, employee earns an Annual Bonus . . . .")). But as noted in the Court's order, Velociti paid Glenn bonuses under the 2017 Contract for the years 2017–2021. (Doc. Nos. 37 at 5; 25-1 ¶¶ 10–11). Further, the 2017 Contract explicitly states – and the parties agree – that Glenn's employment

4

Case 3:24-cv-00031-KDB-DCK   Document 42   Filed 08/14/25   Page 4 of 8

was at-will, and the terms of the 2017 Contract governed Glenn's employment until otherwise provided. (Doc. No. 24-3 at 10 (This agreement . . . shall remain in effected until superseded by a subsequent written agreement . . . .")). And as noted repeatedly, the NCWHA prevents Defendants from changing Glenn's promised wages without advance written notice. *See* N.C. Gen. Stat. § 95-25.13(3). Accordingly, the Court did not clearly err in concluding Defendants are liable for unpaid bonuses under the 2017 Contract until Defendants gave proper statutory notice or Plaintiff's employment status changed (which was after the year 2017).

**B. Violation of the NCWHA**

Regarding the NCWHA violation claim, Defendants first argue that the Court erred in finding that Defendants owed damages under the NCWHA because the NCWHA applies only to "wages earned," and Glenn was not "servicing" the reassigned accounts. (Doc. No. 41 at 16); *see* N.C. Gen. Stat. § 95-25.22 (providing the available recovery for unpaid wages). Defendants' re-argument does not persuade the Court. *See Sanders v. Lowe's Home Ctrs., LLC*, No. 0:15-cv-02313-JMC, 2016 U.S. Dist. LEXIS 140542, at *11 (D.S.C. Oct. 11, 2016) ("A motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court." (citation omitted)).

Further, while Glenn's role admittedly changed when he agreed to develop the VeloMedia program, Glenn's compensation plan still included the recurring residual commission-based payments on accounts that Glenn acquired for Velociti. Under the 2017 Contract, commissions are the "percentage of the gross profit" on assigned

accounts, and "[c]ommissions are 'earned' for purposes of th[e 2017 Contract] based on the total gross profit of assigned accounts as of the last day of each month." (Doc. No. 24-3 at 8). Account teams – not Glenn – were responsible for servicing / managing the accounts on a day-to-day basis. *See* (Doc. No. 24-3 at 9).[1] Defendants continue to misunderstand the root of their liability. The company had the ability to reassign Plaintiff's accounts, but it violated the statute if in doing so it reduced his wages without the required statutory notice. Thus, the Court did not clearly err by concluding that Glenn is entitled to the residual commissions based on the total gross profits of those accounts reassigned without proper statutory notice under the NCWHA.

Second, Defendants argue the Court erred in concluding that the email exchanges between Defendants and Glenn, either alone or in conjunction with Glenn's subsequent paychecks, did not constitute the requisite notice under the NCWHA. (Doc. No. 41 at 20–24). Here again, Defendants attempt to relitigate an issue they already presented to this Court at summary judgment. To the extent that

---

[1] Defendants contend that the 2017 Contract "is not a pay plan where a sale representative lands a customer, turns it over to others for servicing, and gets paid commissions on all revenue received through the entirety of the customer relationship." (Doc. No. 41 at 8). Defendants' interpretation is not at all clear from the terms of the contract. Insofar as this duty under the 2017 Contract is ambiguous, "[a]mbiguous policies and practices shall be construed against the employer and in favor of employees." *Figueroa v. Butterball, LLC*, No. 5:20-CV-585-D, 2021 U.S. Dist. LEXIS 175243, at *22 (E.D.N.C. Sept. 15, 2021) (quoting 13 N.C. Admin. Code 12.0307(c)) (alteration in original); *accord Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 229, 693 S.E.2d 723, 735 (2010).

Defendants argue the Court decided an issue reserved for the jury, (*see* Doc. No. 41 at 23 (citing N.C. Pattern Instructions—Civil 640.60)), this argument fails. In fact, the Court concluded that "no jury could reasonably conclude that the December 2021 emails constitute sufficient notice"—an appropriate conclusion at summary judgment. (Doc. No. 37 at 16); *White v. City of Greensboro*, 532 F. Supp. 3d 277, 305 (M.D.N.C. 2021) ("There is no issue for trial unless sufficient evidence favoring the non-moving party exists for a reasonable factfinder to return a verdict in its favor."), *on recons. in part*, 586 F. Supp. 3d 466 (M.D.N.C. 2022).

The case Defendants now rely on for arguing sufficient written notice exists is *Gallaher v. Ciszek*, No. 19 CVS 5780, 2022 NCBC LEXIS 131, at *1 (N.C. Super. Ct. Nov. 4, 2022), which was available to the Court in deciding summary judgment. *See Regan v. City of Charleston*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014) (A Rule 54(b) motion "may not be used to raise arguments or introduce evidence that could have been addressed or presented previously." (citations omitted)). Nevertheless, *Gallaher* is distinguishable because there the plaintiff received contemporaneously with his paycheck the following memo: "Compensation has been adjusted to meet the terms of your employment agreement." *Gallaher*, 2022 NCBC LEXIS 131, at *18. The North Carolina Business Court determined that this memo "provided the requisite notice under the NCWHA for all future salary payments." *Id.* at *27. Unlike *Gallaher*, in the present case, Defendants presented conflicting emails representing unfinished

7

negotiations, not a written memorandum notifying Glenn of his changed wages.[2] Thus, the Court again concludes it did not clearly err in holding that the December 2021 emails, alone or considered with Glenn's paychecks, failed to present a genuine issue of material fact from which a reasonable jury could find that Defendants provided the requisite notice under the NCWHA.

III. CONCLUSION

**NOW THEREFORE IT IS ORDERED THAT** Defendants' Motion for Reconsideration, (Doc. No. 40), is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 14, 2025

Kenneth D. Bell
United States District Judge

---

[2] Notably, Defendants do not point the Court to any paychecks in the record which notify Glenn of his changed wages.